M.N.,

    *Plaintiff,*

    *v.*

MONONA GROVE SCHOOL DISTRICT,
MOLLY RILLING, TANYA GREENE,
SCOTT GROFF, AND EMILY HUNN,           Case No: 3:22-cv-289

    *Defendants.*

## COMPLAINT

Plaintiff M.N., a minor, by his attorneys, Strang Bradley, LLC, for his complaint against Defendants Monona Grove School District, Molly Rilling, Tanya Greene, Scott Groff, and Emily Hunn, states:

## INTRODUCTION

1. Plaintiff M.N. is a black student at Monona Grove High School ("Monona Grove").

2. M.N. is a member of the Monona Grove Black Student Union.

3. M.N. attended a field trip with the Black Student Union, in which students from the union, along with several chaperones who were Monona Grove staff, toured historically black colleges and other culturally important sights.

4. On Saturday, 9 April 2022, the field trip was coming to a finish. The Black Student Union visited the Whitney Plantation, a museum in Louisiana that focuses exclusively on the lives of enslaved people.

5. From there, the field trip embarked by bus to New Orleans. The students had some free time and then left to return to Wisconsin.

6. On the way home, the bus stopped at a McDonald's in Amite, LA for dinner around 7:45pm. Most of the students and staff went inside to grab something to eat or to use the bathroom, or both. Some of the students remained on the bus.

7. The McDonald's had a faint smell of marijuana in the air. Marijuana is decriminalized in Louisiana.

8. M.N. grabbed something to eat, sat with a couple of friends, and returned to the bus.

9. Defendant Emily Hunn, a teacher at Monona Grove and a chaperone for the field trip, entered the bus and told all of the boys, who were also all black, to grab their bags and exit the bus.

10. Once off the bus, M.N. could see that another one of the boys, who had not yet been back at the bus, had just had his bag searched.

11. Hunn, along with Monona Grove staff members Defendants Molly Rilling, Tanya Greene, and Scott Groff, who are all white, confronted the boys.

12. Hunn told the boys that she smelled marijuana and demanded that they confess to possessing it.

13. Defendants Hunn, Rilling, Green, and Groff told the boys that they had to be searched and demanded that they empty their pockets.

14. The boys followed the order and emptied their pockets—in public and in front of their peers.

15. Hunn told the boys she was going to search their bags next.

16. Just then, two other Monona Grove employee-chaperones, the advisors of the Black Student Union, and the only two black staff members on the trip, came out of the bus and told Hunn to stop.

17. Back on the bus, the students were irate. On the way back to Wisconsin, they demanded answers. The teachers huddled and discussed amongst themselves. Half-hearted apologies were made.

18. At one point, Defendant Rilling admitted to the students that if the field trip had been made up of kids on the ski team, she would not have searched the students.

19. This lawsuit seeks to vindicate M.N.'s constitutional rights. It seeks to effect change through punitive damages by punishing the defendants for their reckless conduct. It seeks to establish that teachers cannot perform humiliating, unparticularized, and racially motivated searches of their students.

## JURISDICTION AND VENUE

20. Plaintiff realleges the above facts.

21. This lawsuit is brought pursuant to 42 U.S.C. §§ 1981 and 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

22. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and the state law indemnification claims pursuant to 28 U.S.C. § 1367(a).

23. Venue is proper under 28 U.S.C. § 1391(b)(2). At least one defendant resides in this district, and upon information and belief all defendants reside in the state of Wisconsin.

## PARTIES

24. Plaintiff realleges the above facts.

25. Plaintiff M.N. is a minor and is a resident of the State of Wisconsin and the County of Dane.

26. Defendant Monona Grove School District is a political subdivision of the State of Wisconsin and is/was the employer of Defendants Rilling, Greene, Groff, and Hunn. Defendant Monona Grove School District is sued as an indemnitor, under Wis. Stat. § 895.46.

27. Defendant Molly Rilling was, at the time of this occurrence, employed as an instructional coach with the Monona Grove School District. Defendant Rilling engaged in the conduct complained of while she was on duty and in the course and scope of her employment with the Monona Grove School District.

28. Defendant Tanya Greene was, at the time of this occurrence, employed as a teacher with the Monona Grove School District. Defendant Greene engaged in the conduct complained of while she was on duty and in the course and scope of her employment with the Monona Grove School District.

29. Defendant Scott Groff was, at the time of this occurrence, employed as a counselor with the Monona Grove School District. Defendant Groff engaged in the conduct complained of while he was on duty and in the course and scope of his employment with the Monona Grove School District.

30. Defendant Emily Hunn was, at the time of this occurrence, employed as a teacher with the Monona Grove School District. Defendant Hunn engaged in the conduct complained of while she was on duty and in the course and scope of her employment with the Monona Grove School District.

31. At all times relevant to this action, Defendants Rilling, Greene, Groff, and Hunn were acting under color of state law, ordinance, and/or regulation. These Defendants are sued in their individual capacities.

## FACTS

32. Plaintiff realleges the above facts.

33. M.N. is a junior at Monona Grove High School in Monona, WI.

34. The Monona Grove School District's student-body is about 4% black.

35. M.N. is a member of the Black Student Union, which includes students of all races but is made up of a majority of black students.

36. The Black Student Union does community service work, helps prepare students for post high school life, and is involved in other activities to promote unity at Monona Grove and in the Monona and Cottage Grove communities.

37. For months, the Black Student Union had been raising money for a trip to visit historically black colleges in the New Orleans area.

38. Back in October of 2021, Toren Young, one of the Monona Grove employee advisors for the Black Student Union, described the importance of the trip: "For the first time, our students will see professors that look like them, staff members that look like them and students that look like them. It makes (college) feel like a realistic dream. It makes them feel like they belong a little bit more."[1]

39. Through its fundraising efforts the Black Student Union raised around $20,000 to fund the trip.

40. Students had to apply for the trip. They had to meet certain standards for grade point average and attendance.

41. There were about 30 students on the trip and seven chaperones.

42. All seven of the chaperones were employees of the Monona Grove School District.

43. The chaperones were two advisors for the Black Students Union, Young and Turkessa Hayes; a counselor; and the four person-defendants, Defendants Rilling, Greene, Groff, and Hunn.

44. Young and Hayes are black.

45. Rilling, Greene, Groff, and Hunn are white.

46. Of the 30 or so students, six were male. All six are black.

47. M.N. was one of the six males.

---

[1] This quote is from a Wisconsin State Journal article from 25 October 2021. The article is available at: https://madison.com/news/local/education/local_schools/halloween-parties-help-fund-monona-grove-black-student-union-trip/article_1fbe60b4-0374-5a6b-b54f-5eafdf417231.html

48. The school required the students going on the trip to agree to allow their bags to be searched at the school before loading onto the bus for the trip. When Monona Grove sports teams travel, they do not have to agree to allow their bags to be searched.

49. The chaperones for the trip searched the bags of the kids going on the trip before they got on the bus.

50. The preliminary bag searches yielded nothing of interest.

51. The students began their trip on 5 April 2022. They arrived in the New Orleans area on the 6th.

52. The students did a boat tour, saw the city, visited historically black colleges, and toured museums.

53. On the last day, they visited the Whitney Plantation.

54. During the trip there were no disciplinary incidents, including no incidents involving drug use. Up to this point, the trip had been a great success—months of hard work had paid off.

55. On the way home to Wisconsin, the students' bus stopped for food at a McDonald's in Amite, Louisiana, about 70 miles north of New Orleans. At the McDonald's the trip took a turn for the worse.

56. Since August of 2021, possession of small amounts of marijuana is decriminalized in Louisiana.

57. The McDonald's reflected this. The restaurant smelled faintly of marijuana, but there was no one smoking in the restaurant.

58. Most of the students and chaperones left the bus to get some food or use the bathroom.

59. M.N. got off the bus and went inside. He ordered some food and sat with some friends to eat it.

60. M.N. never used the bathroom and never went inside the bathroom.

61. M.N. then got back onto the bus.

62. Inside the McDonald's, Defendants Rilling and Hunn had noticed the smell of marijuana.

63. Hunn told Rilling that due to the smell, they needed to search the students, specifically the boys.

64. Rilling lied and told Hunn that the smell was strongest near one of the boys named C.

65. C. was sitting by both girls and boys.

66. Rilling and Hunn talked and discussed that some of the boys, including C., had used the public bathroom.

67. Using the bathroom was one of the purposes for the stop.

68. Rilling and Hunn then talked with Greene, and the three agreed they were going to search all of the boys, not just C., not just those that had been in the bathroom, and none of the girls that had been near C. in the McDonald's.

69. By now, four of the six boys were back on the bus.

70. Hunn boarded the bus and told the four boys to grab their bags and go back inside the McDonald's.

71. While Hunn was on the bus, Green and Rilling made the other two boys empty their pockets, and they searched one of their bags.

72. M.N. and the four other boys on the bus followed the order and left the bus with their bags.

73. Inside the McDonald's, the six boys were encircled by Defendants Rilling, Hunn, Greene, and Groff.

74. Other students realized what was happening and watched.

75. In public and in front of the boys' peers, the defendants accused the boys of having drugs.

76. In public and in front of the boys' peers, the defendants told the boys to empty their pockets.

77. The boys, including M.N., emptied their pockets, revealing no drugs.

78. The defendants then told the boys that they were going to search their bags.

79. Young and Hayes by now also realized what was happening and rushed off the bus.

80. Young approached the defendants and told them that they were not going to search the boys' bags.

81. Young told the defendants that if they seriously suspected that a student had marijuana, then they should search all the students, not just the six black males.

82. The defendants then backed off and agreed not to search the boys' bags. And everyone got back on the bus.

83. The Black Student Union was irate. The students, as a group, demanded an explanation for the unlawful searches.

84. The chaperones huddled together to discuss.

85. The next day on the bus, the chaperones decided to pass a microphone around and allow the students to ask questions and vent.

86. In response to these questions, Defendant Greene said that Defendant Rilling told her that she had seen C. smoking a blunt in the McDonald's lobby. That was a lie.

87. Greene also told the students that Rilling told her that she had been near C. and heard another boy (not M.N) tell C. to "put it out, put it out." That was a lie.

88. Rilling and Greene would later claim that they suspected C. had marijuana because of a miscommunication.

89. Groff told the students that he had searched the bathroom and found marijuana shake. But he admitted that he did not tell anyone about his find at the time.

90. One of the students asked Rilling if they would have searched the students if they had been members of the ski team rather than members of the Black Student Union. Rilling said no, they would not have searched members of the ski team.

91. Later, one of the Black Student Union advisors would ask Rilling if it had been a ski trip, the trip bus stopped at a McDonald's in a predominately black neighborhood, and there was a smell of marijuana, would she have searched the students. Rilling again admitted no, she would not have searched students on a ski trip.

92. No defendant has ever explained why M.N., who was not sitting by C. and who never went into the bathroom, was told to exit the bus and empty his pockets

93. The Monona Grove School District has a history of racist episodes. A report by the Nehemiah Community Development Corporation, commissioned by the City of Monona concluded that "[s]tudents of Color in the Monona Grove School District [] have reported feeling isolated and marginalized for years."

## COUNT 1:
## 42 U.S.C. § 1983 Claim for Unlawful Search and Seizure/Failure to Intervene

94. Plaintiff realleges the above facts.

95. Defendants Rilling, Greene, Groff, and Hunn seized M.N. without reasonable suspicion or probable cause.

96. Defendants Rilling, Greene, Groff, and Hunn searched M.N. by forcing him to empty his pockets without reasonable suspicion or probable cause. The search was not justified at its inception and was not permissible in scope.

97. Both the search and the seizure violated M.N.'s Fourth Amendment right to be free from unreasonable search and seizure.

98. Defendants Rilling, Greene, Groff, and Hunn either participated directly in the search and the seizure or failed to intervene in them.

99. The actions of Defendants Rilling, Greene, Groff, and Hunn were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages set forth above.

100. The Monona Grove School District is required to pay any tort or judgment for damages that its employees are liable for when they are acting within the scope of their employment, under Wis. Stat. § 895.46.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Rilling, Greene, Groff, and Hunn. Because they acted maliciously, wantonly, or oppressively, Plaintiff demands punitive damages. Plaintiff also demands the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT 2:
## 42 U.S.C. § 1983 Claim for Equal Protection Violation/Failure to Intervene

101. Plaintiff realleges the above facts.

102. Defendants Rilling, Greene, Groff, and Hunn intentionally or recklessly discriminated against M.N. because M.N. is black and male, by seizing and searching him. Defendants Rilling, Greene, Groff, and Hunn violated M.N.'s right to equal protection under the Fourteenth Amendment.

103. Defendants Rilling, Greene, Groff, and Hunn either participated directly in the discriminatory search and seizure or failed to intervene in them.

104. The actions of Defendants Rilling, Greene, Groff, and Hunn were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages set forth above.

105. The Monona Grove School District is required to pay any tort or judgment for damages that its employees are liable for when they are acting within the scope of their employment, under Wis. Stat. § 895.46.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Rilling, Greene, Groff, and Hunn. Because

they acted maliciously, wantonly, or oppressively, Plaintiff demands punitive damages. Plaintiff also demands the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT 3:
## 42 U.S.C. § 1981 Claim for Racially Motivated Illegal Search/Failure to Intervene

106. Plaintiff realleges the above facts.

107. Defendants Rilling, Greene, Groff, and Hunn intentionally engaged in a racially discriminatory seizure and search of M.N., who is black. But for the racial and gender animus of Rilling, Greene, Groff, and Hunn, M.N. would not have been searched and his Fourth and Fourteenth Amendment rights would not have been violated.

108. Defendants Rilling, Greene, Groff, and Hunn denied M.N. equal benefits under the law. Defendants Rilling, Greene, Groff, and Hunn either participated directly in the discriminatory search and the seizure or failed to intervene in them.

109. The actions of Defendants Rilling, Greene, Groff, and Hunn were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages set forth above.

110. The Monona Grove School District is required to pay any tort or judgment for damages that its employees are liable for when they are acting within the scope of their employment, under Wis. Stat. § 895.46.

WHEREFORE, pursuant to 42 U.S.C. § 1981, Plaintiff demands actual or compensatory damages against Defendants Rilling, Greene, Groff, and Hunn. Because they acted maliciously, wantonly, or oppressively, Plaintiff demands punitive damages.

Plaintiff also demands the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. PRO. 38(b), on all issues so triable.

Respectfully submitted,

Dated: May 23, 2022

/s/ R. Rick Resch
R. Rick Resch
  Wisconsin Bar No. 1117722
John H. Bradley
  Wisconsin Bar No. 1053124
STRANG BRADLEY, LLC
613 Williamson St., Suite 204
Madison, Wisconsin 53703
[608] 535-1550
Rick@StrangBradley.com
John@StrangBradley.com

*Attorneys for M.N.*